*622 OPINION OF THE COURT
Renee R. Roth, S.
There are two contested applications involving a trust created 12 years ago by Ricki Singer (the grantor). The first is a motion by former trustee Frieda Tydings (the grantor’s aunt) to dismiss the grantor’s objections to Tydings’s accounting. The second is a petition by the grantor to suspend the authority of the present trustee, Steven Singer (the grantor’s brother), during the pendency of a proceeding to remove him from office.
Each application is part of the heated litigation stemming from the grantor’s conviction that she and her trust have to be protected from the designs of her relatives (her siblings and several cousins). Adding to the grantor’s unease is the fact that, although the trustee (her brother) contends that the trust has no funds to support her or to save her home, he nonetheless has found the means — hundreds of thousands of dollars to date — to defend such contention.
The following facts are undisputed. The grantor established the trust for her life benefit, with remainder to her minor child, under an agreement dated November 1, 1993, with Tydings as trustee. The trust was funded with the grantor’s share of family-owned enterprises (including a corporation, “Romulus,” and an unincorporated coventure) involving investments in real estate and marketable securities; the grantor’s New Jersey house was eventually added to the fund. The arrangement was intended to safeguard grantor’s assets and to provide her with income as she wrestled with drug addiction.
Tydings resigned on January 1, 1997, and was succeeded by the present trustee. Until 2003, the grantor had received monthly distributions from the trust in the amount of $10,000. At that point, however, the successor trustee reduced such distributions by half on the ground that the trust did not have enough liquidity to maintain the level of past distributions. Although the grantor had by then overcome her addiction and was working part-time, her earnings were not enough to support her and her young son.
Thereafter, there were negotiations between the grantor and the trustee aimed at establishing a mutually satisfactory buyout of the trust’s share of the family businesses to be followed by a reinvestment of the trust in marketable income-producing assets. Such negotiations eventually failed, however, and distributions to the grantor stopped entirely. She then filed a petition to *623 compel Tydings and the present trustee to account. The request was granted. The present trustee thereupon served the grantor with a notice for a deposition, but on the grantor’s application such notice was set aside in the absence of any pending proceeding for which such discovery might have been appropriate (Matter of Singer, NYLJ, Mar. 4, 2004, at 26, col 4). The trustee then commenced a proceeding for advice and direction on his proposal for an auction sale of trust assets, contending that he was otherwise unable to tap cash from such assets and that the grantor would have to look elsewhere for her support until the assets could be satisfactorily liquidated and reinvested. In such connection, the trustee noted that the family had earlier offered to buy out the trust’s (in effect, the grantor’s) stake in the businesses for $1 million, but that she had rejected the offer. The clear implication was that the grantor’s financial straits were her own fault.
As an odd twist, the million dollar offer was followed within the year by the trustee’s report in his accounting that the value of Romulus (concededly the major component of the businesses) was merely one dollar. When challenged on such point, the trustee explained that the trust had no money to pay for an appraisal of the businesses and that he was therefore constrained to assign the corporation only a nominal value. Although the trustee had in the past been an officer of Romulus as well as a participant in the family’s other coventures, he nonetheless said that he was at a loss when it came to establishing their worth. In other words — if the trustee were to be taken at his word— the $1 million buy-out proposal to the grantor had in effect been based upon a mere guess.
It is observed that the trustee has since disclosed (at the court’s prompting) numerous significant loans from the businesses to various family members (including the trustee himself, individually) suggesting that the trustee may have had a ready source of liquidity through borrowings for the trust if he had wanted one. It is further observed that coventurers themselves have a fiduciary duty to be evenhanded with one another (see Marx v Mack Affiliates, 265 AD2d 202 [1999]).
At about the same time as he reported Romulus’s value at one dollar in his formal accounting, the trustee pressed his petition for advice and direction and asked the court to approve his proposal that the trust’s investment in the businesses be sold at auction. Under the circumstances, as he himself acknowledged, such sale as a practical matter would have involved only bids of *624 family members who hold interests in the businesses. His request for advice and direction, however, was not supported by the kind of information that would have made it possible for the court to provide such relief.
Other applications followed from all sides. The trustee moved for the admission pro hac vice of two members of the California bar, of unidentified special competence, whom he proposed to add to the team of lawyers already representing him (on his application for relief for a trust that he alleged had no money). After conference with the court, his application was withdrawn. The grantor thereafter commenced a proceeding to remove the trustee, and in the accounting by Tydings sought an order directing her to appear at a deposition and requested the imposition of sanctions. The present trustee in turn petitioned for an order, inter alia, requiring the grantor to transfer to him as trustee certain IRAs (inherited by her from their father) on the ground that such IRAs had been listed on the schedule of trust assets annexed to the trust agreement at the time it was executed. Tydings in turn moved for permission to withdraw her accounting on the ground that the statute of limitations had run against the grantor’s right to compel her to account. She thereafter withdrew her motion to withdraw, only to replace it with the present motion to dismiss the grantor’s objections as barred by the statute of limitations (CPLR 3211).
At the call of the calendar, Tydings’s motion to dismiss was denied, on two grounds. First, such motion was based upon the premise that her resignation as trustee had amounted to a “repudiation” of the trust from which the six-year limitations period began to run immediately (CPLR 213). Simply put, such premise is incorrect.
It is a well-settled principle that the statute of limitations on enforcement of a trustee’s obligations begins to run from the time the trustee repudiates such obligations (Matter of Barabash, 31 NY2d 76 [1972]). It is also undisputed that Tydings formally resigned from her trusteeship somewhat more than six years before the grantor brought her petition to compel an accounting. But, although the terms “repudiation” and “resignation” may be used interchangeably where it is not necessary to distinguish them (see, e.g., Kaszirer v Kaszirer, 286 AD2d 598 [2001]), they are nonetheless not synonymous concepts. Indeed, for purposes of the limitations issue raised by Tydings, the difference between the two terms is critical.
A trust relationship is “repudiated” where the putative fiduciary denies having had, or having retained, any fiduciary obliga *625 tion with respect to the property in question, including the duty to account (see, e.g., Roediger v Kraft, 169 App Div 304 [1915]; Matter of Ashheim, 111 App Div 176 [1906], affd 185 NY 609 [1906]). In such case, it is entirely appropriate for the statute of limitations on the right to an accounting to begin to run as soon as the putative beneficiary has notice of the repudiation.
By contrast, a trustee’s “resignation” represents his acknowledgment that he has occupied the office he is vacating and thus implicitly affirms, rather than denies, his duty to account. If a fiduciary resigns with permission of the court, he will be allowed a reasonable time within which to account. Absent a court proceeding, the fiduciary knows that, unless the beneficiaries waive an account, he must account within a reasonable time. In either case, before a reasonable time has elapsed, the beneficiary clearly has no basis to complain that the fiduciary has not accounted. In other words, the statute of limitations can begin to run on the beneficiary’s right to an accounting only where the former fiduciary has failed to have accounted after a reasonable time to do so has passed (see Gilmore v Ham, 142 NY 1, 9 [1894]).
But even if Tydings had alleged facts amounting to a clear repudiation on her part more than six years before grantor’s petition to compel (which she did not), her motion to dismiss would fail for another reason: the time for asserting the defense in this case came and went with the return date on the grantor’s petition to compel. In other words, Tydings waived such affirmative defense when she failed to assert it timely. The decisions cited by Tydings as support for a contrary conclusion do not apply here. First, cases such as Matter of Goldstick (177 AD2d 225 [1992]) merely confirm that the limitations defense cannot be asserted until the allegedly barred claim is raised. Such cases are entirely consistent with the proposition that on an application to compel (where the accountability of a fiduciary is the very matter in issue) a failure to assert a bar to accountability should be deemed to be a waiver of such bar.
Second, cases such as Matter of Irvin (68 App Div 158 [1902]) and Matter of Bialor (NYLJ, Apr. 27, 1989, at 27, col 1) only illustrate that a decision on the merits of a fiduciary’s limitations defense may in some cases appropriately be deferred from the proceeding to compel until an accounting. Such cases do not, however, stand for the proposition that such affirmative defense is improperly raised and considered on the proceeding to compel, a proposition against which there is considerable authority (see, *626 e.g., Matter of Barabash, 31 NY2d 76 [1972]; Matter of Behr, 191 AD2d 431 [1993]; Matter of Meyer, 98 App Div 7 [1904]; Matter of Taylor, 30 App Div 213 [1898]; McCaw v McCaw, 182 Misc 910 [1944]). None of the decisions cited by Tydings suggest that a fiduciary who fails to raise a limitations defense in a proceeding to compel her to account may nonetheless be heard to argue thereafter that she is no longer required to file an account. Indeed, if the defense did not have to be raised at the first opportunity (i.e., on the application to compel), the parties and courts would be burdened by full-fledged accountings that could otherwise have been avoided.
With respect to Tydings’s contention that the limitations defense cannot be raised until the accounting objections themselves are known, the statute does not run against particular action or inaction of the fiduciary during her administration, but instead, as discussed above, it begins to run at the point of repudiation. In other words, the limitations defense does not depend upon the substance of the beneficiary’s objections.
The other application now before the court, i.e., the grantor’s petition to suspend the trustee from office pendente lite, was filed before the petition to remove could be tried. This latest application was prompted by circumstances involving the threatened foreclosure of the grantor’s home. Documents in support of her application indicate that the property is in imminent danger of being lost either to the local taxing authorities, for unpaid real estate taxes, or to a bank, for defaults on a line of credit secured by the grantor with the property as collateral (despite its technical ownership by the trustee). The grantor has submitted the resume of a CPA who is a forensic accountant and has indicated his willingness to serve as interim trustee. The present trustee objects to the grantor’s nominee, but has identified no ground for disqualification, other than the assertion that he is not “neutral.” The nominee’s resume, however, is impressive and there is no basis to conclude that he cannot faithfully fill the office until the merits of the parties’ positions on the removal petition have been tried. Until such time, the troubling circumstances described above call for action without further delay. Therefore, the present trustee is suspended from office and, pending a determination of the removal application, grantor’s nominee, Richard E. Friedman, is appointed temporary trustee upon his qualifying according to law.